IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DUSTIN L.,[1]

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

        Defendant.

No. 1:18-cv-00546-HZ

OPINION & ORDER

Lisa R. J. Porter
JP Law PC
5200 SW Meadows Road, Suite 150
Lake Oswego, Oregon 97035

        Attorneys for Plaintiff

Billy Williams
United States Attorney
Renata Gowie
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Ryan Ta Lu
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

        Attorneys for Defendant

---

[1] In the interest of privacy, this Opinion and Order uses only Plaintiff's first name and the initial of his last name.

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Dustin L. brings this action for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The issues before the Court are whether the Administrative Law Judge ("ALJ") erred by: (1) finding at step two that Plaintiff's mental impairments were not severe; (2) discrediting Plaintiff's testimony; (3) discrediting the opinion of Kimberly H. Schlievert, Ph.D., an examining psychologist; and (4) discrediting the lay-witness testimony of Craig Fleck, Ronalee McCarthy, and Wendy Hoag. Because of the above alleged errors, Plaintiff also contends the ALJ's assessment of Plaintiff's residual functional capacity ("RFC") was also erroneous. I affirm the Commissioner's decision.

## BACKGROUND

Plaintiff applied for DIB on April 7, 2016, alleging a disability onset date of March 5, 2015. Tr. 174.[2] Plaintiff's application was denied initially and upon reconsideration. Plaintiff's administrative hearing was held on August 22, 2017, before ALJ Steven A. De Monbreum. Tr. 44. The ALJ denied Plaintiff's claim in a written decision issued on October 27, 2017. Tr. 21–39. The Appeals Council denied review, rendering the ALJ's decision final. Tr. 1–3.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v.*

---

[2] "Tr." refers to the administrative record transcript, filed here as ECF 12.

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 5, 2015, the alleged onset date. Tr. 24.

At step two, the ALJ determined Plaintiff had the following severe impairments: obesity, "multiple foot surgeries," peripheral neuropathy, plantar fasciitis, osteoarthritis, and degenerative disc disease of the cervical spine with left upper extremity radiculopathy. Tr. 24–25.

At step three, the ALJ found Plaintiff's impairments or combination of impairments did not meet or equal the severity of one of the listed impairments. Tr. 25–26.

Before step four, the ALJ determined Plaintiff had the RFC to perform work at the light exertional level, except that:

> [Plaintiff] can stand or walk only four hours total in an eight hour workday; he can sit for six or more hours total a day; he can occasionally climb ropes or ladders, and can frequently balance, kneel, crouch, crawl, or stoop, bend, and climb ramps or stairs; he can have no more than occasional exposure to workplace hazards such a dangerous machinery or unprotected heights.

Tr. 26–37.

At step four, the ALJ determined Plaintiff is capable of performing his past relevant work as a "grain weigher." Tr. 37. Accordingly, the ALJ found Plaintiff not disabled on that basis.

In the alternative, at step five the ALJ concluded that other jobs exist in the national economy that Plaintiff can perform including storage facility clerk, garment sorter, and laundry folder. Tr. 38. Even if Plaintiff was additionally limited to occasional overhead reaching with the left upper extremity, the ALJ also found Plaintiff could perform other jobs that exist in the national economy including motel desk clerk, call out operator, election clerk, and telemarketer. Tr. 38–39. Accordingly, the ALJ also concluded Plaintiff was not disabled on these bases. Tr. 39.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

DISCUSSION

Plaintiff contends the ALJ's decision was not supported by substantial evidence and contains legal errors. In particular, Plaintiff argues the ALJ made the following errors. First, the ALJ improperly found at step two that Plaintiff's mental conditions did not qualify as "severe" impairments. Second, the ALJ erroneously discredited Plaintiff's testimony. Third, the ALJ improperly discredited the opinion of Dr. Schlievert, a Veterans Administration ("VA") examining psychologist. Fourth, the ALJ erroneously discredited the lay testimony of Craig Fleck, Ronalee McCarthy, and Wendy Hoag. As a result of these errors, Plaintiff contends the ALJ's assessment of Plaintiff's RFC was not supported by substantial evidence and, therefore, the ALJ erroneously determined that Plaintiff was not disabled at step four and, alternatively, at step five.

**I.    Step Two**

As noted, Plaintiff contends the ALJ erred when he declined to find Plaintiff's mental impairments to be "severe impairments" at step two of the sequential analysis. Step two of the

five-step disability inquiry is a *de minimis* screening used to eliminate groundless claims. *Yuckert*, 482 U.S. at 153–154 (1987); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (holding that ALJ should have continued the sequential disability analysis beyond step two because there was not substantial evidence showing that the plaintiff's claim was groundless). An impairment or combination of impairments can be found to be "not severe" only if evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." SSR 85–28, 1985 WL 56856, at *2. If the ALJ determines that an impairment is a severe medically determinable one, the analysis proceeds to step three. *Keyser v. Commissioner Social Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). If the ALJ erroneously finds a condition is not severe at step two, however, that error is harmless if the ALJ nonetheless proceeds in the disability analysis and considers the symptoms and limitations arising from the erroneously omitted condition in the formulation of the claimant's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

In the portion of his decision specific to step two, the ALJ found that Plaintiff's "mental impairments result in few if any deficits," and made only summary findings pursuant to the "paragraph B" criteria in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24. The ALJ, however, extensively addressed the medical evidence regarding Plaintiff's mental-health conditions in his discussion of the evidence as it related to the assessment of Plaintiff's RFC. Tr. 29–30, 33–35. In particular, the ALJ found Plaintiff denied having either depression or anxiety to Tracy L. Chisholm, Psy.D., Plaintiff's treating psychologist, and told Michael R. Villanueva, Psy.D., an examining psychologist, that mental-health conditions do not interfere with his ability to perform daily or work activities. Tr. 35. The ALJ also noted that a March 16, 2017, depression screening

was negative. Tr. 35. Accordingly, the ALJ found Plaintiff did not have any severe mental-health impairments.[3] Tr. 35.

The Court concludes these findings are supported by substantial evidence. The ALJ was correct that Plaintiff "did not endorse current difficulties with depressed or anxious mood" to Dr. Chisholm on February 20, 2015, which was shortly before the alleged onset date. Tr. 311. On May 22, 2015, Dr. Chisholm found Plaintiff has "no mental, emotional, cognitive, or physical barriers preventing him from being fully employable in an alternative occupation that is not as physically demanding." Tr. 296. Similarly, on June 7, 2016, Plaintiff denied experiencing "severe" symptoms of depression and told Dr. Villanueva that "[d]epression did not interfere . . . with his performance of work tasks" or activities of daily living. Tr. 664. Finally, the ALJ correctly noted Plaintiff had a negative depression screen on March 16, 2017. Tr. 871. The most significant evidence in the record that indicated Plaintiff had severe mental-health impairments was Dr. Schlievert's opinion, but, as discussed fully below, the ALJ provided legally sufficient reasons for discrediting that opinion.

Accordingly, the Court concludes the record supports the ALJ's conclusion that Plaintiff's mental-health impairments were not severe, and, therefore, the ALJ did not err at step two.

---

[3] To the extent that Plaintiff argues the ALJ erred by not discussing this evidence in the section of his decision specific to step two, the Court rejects Plaintiff's argument. Although the ALJ placed his discussion of this evidence in the section of the decision related to the assessment of Plaintiff's RFC, the ALJ concluded at the end of that discussion that "no 'severe' mental impairments are present." Tr. 35. The ALJ made clear, therefore, that his discussion of the mental health-related evidence also applied to his step two findings. The Court, therefore, considers that discussion when assessing whether the ALJ's step-two findings were supported by substantial evidence.

## II. Plaintiff's Testimony

Plaintiff contends the ALJ improperly rejected his testimony regarding the severity and extent of his limitations. The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm. Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

8 – OPINION & ORDER

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted).

As the Ninth Circuit further explained in *Molina*;

> While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d at 1112–13 (internal citations and quotation marks omitted).

At the August 22, 2017, hearing, Plaintiff testified he was forced to leave his last job after he "hit a steel rod on [his] elbow and had emergency surgery on [his] arm" because he "busted his artery." Tr. 50. As a result of that injury, Plaintiff testified his left arm "doesn't function good," which caused him to be unable to work in an office at his previous employment. Tr. 50–51. Plaintiff also indicated he could not perform modified office duty in his previous job because he had difficulty paying attention and concentrating caused by his pain medication. Tr. 54–55. Plaintiff testified he applied for unemployment benefits and looked for a job as a stocker in a grocery store after he left his previous job in 2015. Tr. 51–52. Plaintiff, however, told the ALJ that he later determined he was not able to return to work. Tr. 51–52.

Plaintiff also reported he has longstanding pain in his feet and knees that has worsened over time. Tr. 56–57. Plaintiff told the ALJ that pain remained about the same at the time of the hearing as it was when he left his last job. Tr. 56–57. Plaintiff testified his foot pain makes it difficult to stand and walk, causes "throbbing pain" while sitting, and that he currently has to elevate his feet five to six hours per day. Tr. 59. Plaintiff also told the ALJ that he gets only "two to three hours" of sleep per night because of his pain. Tr. 60.

When asked about his mental impairments, Plaintiff indicated he was "[j]ust frustrated with the pain, and not sleeping, and trying to be a father and husband." Tr. 62. Asked whether he experiences episodes of depression, Plaintiff responded: "I try to get away from them. I mean, but, I know I'm angrier, upset. When the pain is too much or whatever, I get short tempered." Tr. 62.

In his April 30, 2016, Adult Function Report, Plaintiff wrote that in a typical day he wakes up; makes coffee; and then sits down, puts his feet up, and watches television. Tr. 206. Plaintiff indicated he "sometimes ride[s] to the store." Tr. 206. Plaintiff reported his pain prevents him from doing any house or yard work, and that he is unable to do any cleaning, cooking, or laundry. Tr. 208. Plaintiff indicated he can ride in a car, but he does not drive. Tr. 208. Plaintiff also reported his wife does the shopping for their household. Tr. 208. Plaintiff reported he does not participate in any social activities, and he does not go anywhere outside his home on a regular basis. Tr. 209.

Plaintiff indicated in his Adult Function Report that his conditions affect his abilities to lift, squat, bend, stand, walk, sit, climb stairs, remember, complete tasks, concentrate, and get along with others. Tr. 210. Plaintiff reported he can only walk "maybe [one-half of] a block" and that thereafter he cannot again walk until the next day. Tr. 210. Plaintiff indicated he can no longer stand more than 10 minutes, and that he sleeps only one to four hours per day. Tr. 206.

The ALJ discredited Plaintiff's testimony because (1) Plaintiff made inconsistent statements regarding the elbow or hand injury that preceded the end of his employment; (2) Plaintiff made inconsistent statements regarding his activities of daily living; (3) Plaintiff told medical providers that he was capable of performing less physically demanding work; (4) the medical evidence did not reflect that Plaintiff's condition worsened between the time that he

successfully worked full-time and when he asserted he became disabled; and (5) Plaintiff demonstrated poor effort in a consultative examination with Michael Henderson, M.D., an examining physician.

The ALJ correctly found Plaintiff made inconsistent statements regarding his elbow injury. As noted, Plaintiff testified he left the job that immediately preceded his alleged onset of disability because an on-the-job elbow injury "busted an artery" and required emergency surgery. Tr. 50. As a result, Plaintiff testified that arm does not function well. Tr. 50–51. Plaintiff also told Dr. Villanueva on June 7, 2016, that he "injured his elbow at work" when he hit it "so hard that it disrupted the vascularization of the left upper extremity" and that "[h]e underwent vascular surgery with grafting in order to save the arm." Tr. 662. The medical record does not reflect any such injury and there is not any record of an emergency elbow surgery or subsequent severe elbow or arm limitations. On May 25, 2015, just two months after the alleged onset date, Plaintiff told Dr. Chisholm that he was assigned to office work at his job after he was "shot in his [left] hand with a pellet gun by a co-worker." Tr. 295. Plaintiff did not mention any elbow injury that required emergency surgery. Tr. 295. This report to Dr. Chisholm was supported by contemporaneous medical records that indicated Plaintiff was seen in the emergency room to remove a BB from his knuckle after an accident with a coworker in the parking lot at work. Tr. 838. Accordingly, the ALJ correctly found Plaintiff made inconsistent statements regarding his elbow injury, and the medical record raises significant doubt that any such injury occurred. Considering the significance of the limitations that Plaintiff ascribed to this injury at the hearing and to the examining psychologist, this reason alone is a compelling justification to discredit the entirety of Plaintiff's testimony.

The ALJ also reasonably found Plaintiff made inconsistent statements regarding the extent of daily activities that he can perform. As noted, Plaintiff reported in his Adult Function Report that he is not capable of performing any household tasks and that he does not socialize outside his home. Tr. 209. The ALJ found these reports to be inconsistent with Plaintiff's statements to medical providers that he attended a "BIG party" on July 18, 2015, and that he was "working on his bike" in March 2017. Tr. 487, 825 (capitalization in original). The ALJ's findings in this regard, therefore, are supported by the record and the ALJ reasonably concluded such inconsistencies undermine Plaintiff's credibility.

The record also supports the ALJ's finding that Plaintiff's statements regarding his ability to pursue other employment undermined his testimony that he became disabled after the end of his previous employment. In particular, the ALJ focused on Plaintiff's statements to medical providers that he believed he could perform sedentary work. For example, on May 22, 2015, after the alleged onset date, Plaintiff reported to Dr. Chisholm that his reassignment to an office job had "reliev[ed] pain in his feet" and "enlightened him as to how much more appropriate a different occupational position would be for him, given his medical status." Tr. 295. As a result, Dr. Chisholm found Plaintiff has "no mental, emotional, cognitive, or physical barriers preventing him from being fully employable in an alternative occupation that is not as physically demanding." Tr. 296. Similarly, in October 2013, Plaintiff indicated "[h]e would be willing to work in a sedentary capacity, in a seated position." Tr. 400. The ALJ reasonably concluded these statements contradict Plaintiff's allegation that he was completely disabled as of the alleged onset date.

The ALJ also reasonably found little basis in the record to conclude Plaintiff's functionality diminished such that he was able to be employed full-time before the alleged onset

date, but could no longer work afterward. The record as a whole is clear that Plaintiff's foot pain is the underlying cause of most of his impairments. As noted, however, those complaints are longstanding and there is not a clear basis in the record to establish that Plaintiff's condition worsened to the point that his statements regarding being able to work in a less physically demanding environment in 2013 and 2015 became untrue at any time relevant to Plaintiff's disability application.

Finally, the ALJ correctly observed that Dr. Henderson, the consultative examining physician, found Plaintiff gave poor effort in his examination and made allegations regarding the extent of his limitations that were not supported by objective findings. After examining Plaintiff, Dr. Henderson noted "[f]ull effort was not given" and Plaintiff demonstrated "pain behaviors out of proportion to the objective findings." Tr. 659. Dr. Henderson went on to observe that his "objective findings do not support the subjective history" and that Plaintiff's "[p]erformance during exam was inconsistent." Tr. 659. The ALJ reasonably concluded Dr. Henderson's findings are additional evidence that Plaintiff's testimony was unreliable.

The Court finds these reasons, taken together, amount to clear and convincing reasons supported by substantial evidence to discredit Plaintiff's testimony. Accordingly, on this record the Court concludes the ALJ did not err when he discredited Plaintiff's testimony because he provided legally sufficient reasons for doing so.

## III.   Dr. Schlievert's Opinion

Plaintiff next contends the ALJ improperly discredited the opinion of Dr. Schlievert, an examining psychologist who assessed Plaintiff in relation to his VA disability determination. Social security law recognizes three types of physicians: (1) treating; (2) examining; and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more

weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2). Moreover, more weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle*, 533 F.3d at 1164 (quoting *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830–31).

Dr. Schlievert examined Plaintiff on September 5, 2015. Tr. 452–58. Dr. Schlievert observed Plaintiff to have "a depressed and anxious mood" and noted his "affect was flat and dysphoric." Tr. 454. Plaintiff reported to Dr. Schlievert that "sometimes when he is hurting badly, he cannot calculate, has trouble with memory, concentration, and attention, and has difficulty making decisions." Tr. 453. Dr. Schlievert found Plaintiff's "depression has worsened since his last examination," and "[h]is mental status has been severely affected by his service connected condition." Tr. 457. Dr. Schlievert concluded Plaintiff has "severe depression in relation to his chronic pain," and that Plaintiff does not function well as a result. Tr. 457.

The ALJ discredited Dr. Schlievert's opinion because it was inconsistent with the medical record and, in particular, Dr. Chisholm's findings; Plaintiff exaggerated his reports to Dr. Schlievert; and Dr. Schlievert's opinion was inconsistent with Dr. Villanueva's examination. Tr. 33–34. Because Dr. Schlievert's opinion is contradicted by Dr. Villanueva's opinion and Dr. Chisholm's assessment, the ALJ was required to provide specific and legitimate reasons to discredit Dr. Schlievert's opinion. *Carmickle*, 533 F.3d at 1164.

The ALJ reasonably found Dr. Chisholm's findings and assessment to be more reliable than Dr. Schlievert's and the ALJ properly discredited Dr. Schlievert's opinion on that basis. Whereas Dr. Schlievert was an examining psychologist, Dr. Chisholm was a treating psychologist and, therefore, was more familiar with Plaintiff than Dr. Schlievert.

Moreover, the ALJ reasonably found Plaintiff's reports to Dr. Schlievert to be inconsistent with other portions of the medical record. For example, Plaintiff told Dr. Chisholm that he did not suffer from depression or anxiety, but Dr. Schlievert nonetheless found Plaintiff to be depressed and anxious largely on the basis of Plaintiff's reports of significant depression and anxiety symptoms. Tr. 311, 454. Moreover, contrary to what Plaintiff told Dr. Schlievert, Plaintiff reported to Dr. Villanueva that he was not experiencing severe depression and that it did not interfere with his work or daily activities. Tr. 664. The ALJ, therefore, reasonably found Plaintiff's reports to Dr. Schlievert to be exaggerated and inconsistent with the record.

On this record, therefore, the Court concludes the ALJ did not err when he discredited Dr. Schlievert's opinion because he provided legally sufficient reasons for doing so.

## IV.   Lay Testimony

Plaintiff next contends the ALJ erred when he discredited the lay testimony of Ronalee B. McCarthy, Plaintiff's friend; Craig Fleck, Plaintiff's former employer; and Wendy Hoag, one of Plaintiff's family members.

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Lay-witness testimony cannot be disregarded without comment and the ALJ must give germane reasons for discounting such testimony. *Molina*, 674 F.3d at 1114. Germane reasons must be

specific. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout*, 454 F.3d at 1053). Germane reasons for discounting lay-witness testimony include: conflicts with medical evidence and inconsistency with the plaintiff's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001). Another germane reason to discredit lay testimony is that it is substantially similar to the claimant's validly discredited allegations. *Valentine*, 574 F.3d at 694.

### A. McCarthy's Testimony

McCarthy submitted a Third Party Function Report dated August 21, 2016, in which she testified Plaintiff cannot "stand on his feet very long" and "doesn't really do much of anything" because of pain. Tr. 236. McCarthy reported Plaintiff "doesn't do social activities" and that he cannot walk more than approximately 50 feet before needing to rest until the following day. Tr. 241. McCarthy also indicated Plaintiff lost his previous job "because of his feet." Tr. 241.

The ALJ discredited McCarthy's testimony on the basis that it "essentially duplicates [Plaintiff's] own allegations" and was inconsistent with Dr. Henderson's examination findings. Tr. 37. The ALJ correctly found McCarthy's reported limitations were substantially similar to Plaintiff's allegations, which, as noted, the ALJ properly discredited. This is a germane reason to discredit McCarthy's testimony. *Valentine*, 574 F.3d at 694. Moreover, the ALJ reasonably determined McCarthy's descriptions of Plaintiff's foot pain and walking and standing limitations were inconsistent with Dr. Henderson's findings that Plaintiff was not so limited. *See* Tr. 659–60.

Accordingly, on this record the Court concludes the ALJ did not err when he discredited McCarthy's testimony because he provided legally sufficient reasons for doing so.

B.     Fleck's Testimony

Fleck submitted two letters to the VA on Plaintiff's behalf. In his first letter, dated March 5, 2015, Fleck indicated "[b]ecause of [Plaintiff's] injury we have not been able to work him at full capacity." Tr. 264. Fleck also reported Plaintiff was unable to operate machinery on the job because of his pain medications, and that the was not able to perform many of the duties he was hired to perform. Tr. 264.

In a September 8, 2015, letter, Fleck indicated he was unable to continue to employ Plaintiff "due to his increasing problems with his injury along with the pain medications." Tr. 263. Although Fleck indicated Plaintiff "was a good worker," he also stated that if Plaintiff continued to work "it was obvious that it was going to further his injury." Tr. 263.

The ALJ discredited Fleck's testimony because it was "marked by inconsistencies between the reasons [Fleck] state[s] the claimant was laid off, and those [Plaintiff] relates or emphasizes in his testimony." Tr. 31. In particular, the ALJ found Fleck's repeated references to the effects of Plaintiff's "injury" without specifying the nature of that injury and without referencing Plaintiff's difficulty ambulating or chronic foot pain rendered Fleck's testimony unhelpful to assessment of Plaintiff's application.

The ALJ's findings are supported by the record and provide a reasonable basis to discredit Fleck's testimony. Fleck's repeated general references to Plaintiff's "injury," in particular, render it difficult to assess his testimony. It is not clear whether Fleck merely referred to Plaintiff's on-the-job elbow or hand injury or whether Fleck intended to more broadly refer to Plaintiff's chronic foot pain and difficulty ambulating. This ambiguity in Fleck's testimony is particularly important in light of Plaintiff's inconsistent reports regarding the conditions that forced him to leave his previous job and the nature of the injury that Plaintiff suffered on the job.

Accordingly, the Court concludes the ALJ provided legally sufficient reasons to discredit Fleck's testimony.

### C. Hoag's Testimony

Hoag wrote a letter to the Social Security Administration in which she opined Plaintiff has struggled with his foot problems since serving in the Navy. Tr. 277. Plaintiff's foot problems, Hoag stated, also led to other conditions, including depression. Tr. 277. Hoag indicated Plaintiff's condition worsened as a result of his "arm injury a few years ago." Tr. 277. Hoag reported Plaintiff is "always in pain and therefore can only sustain activity for short periods." Tr. 278.

The ALJ partially discredited Hoag's testimony because the medical record reflected Plaintiff's depression was not symptomatic. The ALJ indicated, however, that Hoag's general testimony regarding Plaintiff's pain was broadly consistent with the ALJ's assessment of Plaintiff's RFC, which included physical limitations.

As discussed above, the ALJ reasonably found the medical record indicated that Plaintiff's depression was not symptomatic and did not interfere with his daily activities. This is a valid basis to discredit that portion of Hoag's testimony. The ALJ also reasonably found Hoag's testimony regarding Plaintiff's pain to be undetailed, and, as such, the ALJ reasonably interpreted that testimony as consistent with the ALJ's assessment of Plaintiff's RFC.

Accordingly, the Court concludes the ALJ did not err when he partially discredited Hoag's testimony because he provided legally sufficient reasons for doing so.

Because the Court concludes the ALJ did not err in his consideration of Plaintiff's mental-health conditions at step two, in his consideration of Plaintiff's testimony, in his assessment of Dr. Schlievert's opinion, or in his consideration of the lay testimony, the Court

concludes Plaintiff has not established that the ALJ erred in the formulation of Plaintiff's RFC. Accordingly, the ALJ also did not err when he found Plaintiff not disabled at step four or, in the alternative, at step five.

CONCLUSION

For these reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

DATED this 21 day of May, 2019.

/s/ Marco A. Hernández
MARCO A. HERNÁNDEZ
United States District Judge